UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JESSICA HUBER,
    Plaintiff                                 **COMPLAINT**

vs.

COUNTY OF ERIE,                               **Civil Action No.**
ERIE COUNTY SHERIFF TIMOTHY B. HOWARD,
ERIN BURCH, PSYCHOLGIST,
SHANNON STEVENSON,
CHRISSY SCOTT,
MELISSA MULDOON,
CALLY GRAHAM,
CYNTHIA MULLER, RN,
KEVIN BUGMAN, RN,
KRISTINA KRTANJEK, NP,
TOM CHAPIN, PNP, and
UNIVERSITY PSYCHIATRIC PRACTICE, INC.,
    Defendants.

_____

## JURISDICTION

1.     This is a civil action seeking damages pursuant to 42 U.S.C. 1983 for the violation of Plaintiff's Constitutional Rights under both the Due Process Clause of the Fourth and Fourteenth Amendments of the US Constitution and resultant damages thereof, as well as the torts of negligence and medical malpractice against private actors.

## PARTIES

2.     The plaintiff, JESSICA HUBER ("HUBER"), at all times hereinafter mentioned, was and still is a resident of the County of Erie and the State of New York.

3.     The COUNTY OF ERIE ("COUNTY") is a municipal corporation organized and existing under and by virtue of the laws of the State of New York. Said County's central business offices are located at 95 Franklin St., Buffalo, N.Y. 14202. The COUNTY is charged by the laws of the State of New York to maintain the Erie County Holding Center ("ECHC") and is responsible for the health and safety of persons incarcerated at ECHC.

4.     ERIE COUNTY SHERIFF TIMOTHY B. HOWARD ("HOWARD") was and is a resident of the County of Erie and State of New York, and was and is the Sheriff of Erie County and is responsible for the day-to-day operations of ECHC. In his official capacity as Sheriff, he has the custody, control, and charge of the ECHC and the inmates confined within. His place of business is 10 Delaware Ave., Buffalo, New York 14202. Sheriff HOWARD is sued in his official capacity.

5.     ERIN BURCH, PSYCHOLOGIST (BURCH) was and is a resident of the County of Erie and State of New York, and was and is a psychologist, duly licensed in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Specifically, she is a clinical forensic psychologist with the Erie County Forensic Mental Health Service, located at 120 W. Eagle Street #1, Buffalo, New York 14202. Upon information and belief, BURCH was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY BURCH is sued in her individual capacity.

6.     SHANNON STEVENSON (STEVENSON) was and is a resident of the County of Erie and State of New York, and was and is a Licensed Mental Health Counselor duly licensed in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Upon information and belief, STEVENSON was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. STEVENSON is sued in her individual capacity.

7.     CHRISSY SCOTT (SCOTT) was and is a resident of the County of Erie and State of New York, and was and is Mental Health Counselor, duly licensed in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC.

Upon information and belief, SCOTT was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. SCOTT is sued in her individual capacity.

8. MELISSA MULDOON (MULDOON) was and is a resident of the County of Erie and State of New York, and was and is a nurse practitioner duly licensed to practice in the State of New and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Upon information and belief, MULDOON was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. MULDOON is sued in her individual capacity.

9. CALLY GRAHAM (GRAHAM) was and is a resident of the County of Erie and State of New York, and was and is a Mental Health Counselor, duly licensed in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Upon information and belief, GRAHAM was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. GRAHAM is sued in her individual capacity.

10. CYNTHIA MULLER, RN ("MULLER") was and is a resident of the County of Erie and State of New York, and was and is a nurse practitioner duly licensed to practice in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Upon information and belief, MULLER was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. NURSE MULLER is sued in her individual capacity.

11. KEVIN BUGMAN, RN ("BUGMAN") was and is a resident of the County of Erie and State of New York, and was and is a registered nurse practitioner duly licensed to practice in the State of New York and was under a duty to provide care and treatment to HUBER while incarcerated at ECHC. Upon information and belief, BUGMAN was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY NURSE BUGMAN is being sued in his individual capacity.

12. KRISTINA KRTANJEK, NP ("KRTANJEK") was and is a resident of the County of Erie and State of New York, and was and is a nurse practitioner duly licensed to practice in the State of New York. KRTANJEK was under a duty to provide medical care and treatment to HUBER while she was incarcerated at ECHC. Upon information and belief, KRTANJEK was an employee, agent, servant, contractor, or otherwise engaged to render medical care to detainees at the ECHC on behalf of HOWARD and or the COUNTY. KRTANJEK is sued in her individual capacity.

13. TOM CHAPIN, PNP ("CHAPIN"), was and is a resident of the County of Erie and State of New York, and was and is a nurse practitioner duly licensed to practice in the State of New York. CHAPIN was under a duty to provide medical care and treatment to HUBER while she was incarcerated at ECHC. CHAPIN is sued in his individual capacity.

14. UNIVERSITY PSYCHIATRIC PRACTICE, INC. ("UPPI") was and is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of New York, and maintains an office for the transaction of business located within the County of Erie and the State of New York. Defendant TOM CHAPIN, PNP was employed and/or an agent of UPPI during HUBER'S incarceration at ECHC. UPPI was contracted by the COUNTY, HOWARD and/or the SHERIFF'S OFFICE to provide medical care and treatment to inmates at the ECHC.

## STATEMENT OF FACTS

15. The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through " 14" of this Complaint with the same force and effect as if fully set forth herein.

16. On January 24, 2018 Plaintiff HUBER was arrested for a probation violation and transported to ECHC. She was placed in the custody of Defendants ERIE COUNTY and TIMOTHY HOWARD.

17. Upon arrival to the ECHC, HUBER met with defendant MULLER for an Intake Screening. During that screening, HUBER relayed to MULLER the medications that she was prescribed and taking to treat various medical conditions, including but not limited to: depression, anxiety, and bipolar disorder. HUBER in fact relayed that she had taken Klonopin that day, and that she regularly takes 1mg of said drug three times a day.

18. The medications and supplements HUBER was taking upon her intake to ECHC, all of which were properly prescribed by a licensed NYS medical professional and/or taken as directed by one, are as follows:

- Bupropion XL
- Clonazepam
- Folic acid
- Iron
- Lyrica
- Meloxicam
- Metoprolol ER
- Naratriptan
- Praxosin
- Rabeprazole DR
- Seroquel IR
- Topiramate
- Trazodone
- Trintellix
- Welchol
- Bronson organic vitamin D3
- Sustained release vitamin B12
- Cranberry with vitamin C
- Migrelief triple therapy with purcaol
- Nature made multi complete

19. Plaintiff provided that list of her medications to Defendant MULLER. Following her Intake Screening, MULLER sent HUBER to undergo a detox evaluation as to the drug "Klonopin." Defendant MULLER, despite having a duty to do so, took no action to tend to Plaintiff Huber's serious medical needs.

20. Later on January 24, 2018 HUBER had a Mental Health Assessment and Admissions Screening by Defendant STEVENSON. During this assessment, HUBER relayed to said Defendant that she has been on Klonopin since 2016 and would be in grave danger without said substance. Defendant STEVENSON, despite having a duty to do so, took no action to tend to Plaintiff Huber's serious medical needs.

21. On January 25, 2018 HUBER had a detox evaluation with Defendant KRTANJEK. Defendant KRTANJEK reviewed HUBER'S medical history and medications and subsequently cleared Plaintiff HUBER from detox. Defendant KRTANJEK, despite having a duty to do so, took no action to tend to Plaintiff Huber's serious medical needs.

22. On January 25, 2018 at 8:18 p.m., HUBER was administered Ibuprofen by Michael Carr, LPN. She was not administered any other medications due to a note in her records indicating "Court." **Any other medications were started on the morning of January 26, 2018. Her morning medications were administered by Michael Carr, LPN and consisted of: Minipress, Topiramate, Risperdal and Ibuprofen. Her evening medications that day were administered by Amy Prieur, LPN and consisted of Metoprolol Succinate ER, Ibuprofen, CVS Omeprazole, Trintellix, Topiramate and Welchol.

23. On January 26, 2018 HUBER met with psychologist Defendant BURCH. HUBER was tearful and reported she was having migraines, was in pain from her fibromyalgia, was having difficulty sleeping, had a poor appetite, and was having vague ideations of suicide. Of significant importance, HUBER also told Defendant BURCH that her medications were not being provided to her by the ECHC pharmacy. Defendant BURCH, despite having a duty to do so, took no action to tend to Plaintiff Huber's serious medical needs.

24. On January 27, 2018 HUBER had a mental health evaluation with Defendant GRAHAM in which she again relayed that she was not receiving some of her medications. HUBER advised Defendant GRAHAM that she could feel a "manic episode coming," was on edge, and was having difficulty sleeping. HUBER further advised said Defendant that there had

been a previous occasion where she had undergone benzodiazepine withdrawal, as was the case here, and that she had then gone into a catatonic state for five days.

25.     Following the session with Defendant GRAHAM and while being escorted back to the Constant Observation Unit, HUBER collapsed after feeling lightheaded. ECHC records indicate that the Deputies told responding registered nurse, Defendant BUGMAN, that they caught HUBER and eased her to floor.  HUBER was found to be "largely unresponsive to medical and security staff questions."

26.     Defendant BUGMAN, in response, kicked HUBER in her head and told her to "quit faking".

27.     HUBER was then transported by wheelchair to be examined by Defendant KRTANJEK.  During this exam, HUBER stated she felt dizzy. Defendant KRTANJEK encouraged HUBER to increase her fluids and to follow-up if needed. KRTANJEK took no affirmative action to tend to Plaintiff Huber's dire medical condition and medical needs at that time, despite having a duty to do so.

28.     On January 28, 2018, HUBER had a mental health evaluation with Defendant SCOTT in which HUBER again stated that her medications are not being regulated in ECHC as they should be.  HUBER was noted to present with a depressed mood, flat affect, and she stated that she was in a lot of pain and not sleeping.  All of these are known effects of benzodiazepine withdrawal, which was a fact that should have been known by any and all of the Defendants.

29.      On January 30, 2018 HUBER had a psychiatric medication consult with Defendant CHAPIN.  During this consult, HUBER relayed to CHAPIN that she has a history of bipolar disorder, anxiety, depression, as well as other conditions.  HUBER also stated that she actively treats with a psychiatrist and has manic episodes.  CHAPIN made note of HUBER'S active medications while at ECHC, which did not include Klonopin or Clonazepam, its generic version. CHAPIN took no affirmative action to tend to Plaintiff Huber's dire medical condition and medical needs at that time, despite having a duty to do so.

30. On January February 2, 2018 HUBER had a comprehensive suicide risk assessment with Defendant GRAHAM. During this assessment, it is again noted that HUBER was being treated for various mental health conditions, including bipolar. During this assessment, HUBER was noted to be initially coherent and then started to lay her head on the desk, indicating that she was feeling light-headed. Medical personnel came to treat HUBER and noted that while HUBER knew her name and the current year, she stated that she did not know where she was. A note was made by Defendant GRAHAM that HUBER was exaggerating her condition to feign mental health and medical symptoms. GRAHAM took no affirmative action to tend to Plaintiff Huber's dire medical condition and medical needs at that time, despite having a duty to do so. Plaintiff was in the midst of benzodiazepine withdrawal, and Defendants showed deliberate indifference and conscious disregard to her medical state and the imminent risk that she was under as a result thereof.

31. On February 3, 2018, Defendant MULDOON made a Constant Observation Progress Note indicating that HUBER presented as drowsy and with very slow speech. It was also noted that when HUBER was asked where she was, she initially stated, "I don't know," and that she presented with impaired judgment. Such symptoms are consistent with benzodiazepine withdrawal.

32. On February 4, 2018 Defendant SCOTT had a Constant Observation Progress interview with HUBER. Defendant SCOTT noted that HUBER presented with poverty of speech, stated she was not sleeping well, and was having panic attacks. Such symptoms are consistent with benzodiazepine withdrawal.

33. On February 6, 2018 HUBER was found on the floor of her cell after falling off her bed. HUBER not able to verbally respond and her pupils were dilated but not responsive bilaterally. HUBER was transported to the delta medical unit where she had a seizure lasting one minute with full body jerking, slight urine incontinence and drooling. HUBER was tachycardiac and her oxygen saturation levels dropped to the high 80s.

34. Jasmine Richardson, NP called for an ambulance. Before the ambulance arrived, HUBER had another seizure lasting for one minute forty-five seconds. HUBER'S pupils were dilated; she was not responsive and unable to give any verbal responses.

35. HUBER was taken to Erie County Medical Center (ECMC) by American Medical Response, an emergency medical services company.

36. HUBER was hospitalized from February 6, 2018 to February 23, 2018.

37. HUBER had several seizures upon being admitted to ECMC on February 6, 2018.

38. On February 8, 2018 HUBER was noted to be incontinent, nonverbal, cyanotic, tachycardic and unresponsive. As a result, HUBER was intubated and placed in the Trauma Intensive Care Unit (TICU).

39. Notes from ECMC Attending physician Harsha Yedlapati notate that HUBER had, prior to her intake at ECHC, taken Klonopin, 1mg three times a day. She noted that HUBER had not taken the medication for approximately three weeks. HUBER'S seizures were caused by and were consistent with benzodiazepine withdrawal. Importantly, all above-referenced Defendants did not substitute any drugs in for Klonopin or come up with any plan or action that could have potentially staved off HUBER'S benzodiazepine withdrawal. Such inaction and deliberate indifference towards HUBER'S medical needs almost killed her, caused her enormous pain and suffering, and caused her to sustain permanent damage.

40. ECMC physician Mohammadreza Azadfard started HUBER on a medically managed detox by restarting HUBER on clonazepam at1mg three timesa day, and every 2 days decreased such dosage by a half milligram until she was properly weaned off the medication.

41. On February 9, 2018, HUBER's body temperature dropped to 96.4 degrees and a bear hugger was utilitized until her body temperature elevated to 99.8 degrees. HUBER was minimally responsive, on a full ventilator and was in acute respiratory failure, had acute encephalopathy, seizure and presumed asipration. She nearly died.

42. From February 6, 2018 to February 13, 2018 HUBER experieced seizures, was intubated, was put on a ventilator due to benzodiazepine withdrawal, and was treated for aspiration pnemonia.

43. On February 15, 2018 HUBER was finally extubated.

44. On February 23, 2018 HUBER was discharged from ECMC and returned to ECHC.

45. Defendants, along with their respective agents, servants, and/or employees failed to exercise due and reasonable care under the circumstances in rendering medical treatment to HUBER. The aforementioned Defendants failed to properly, adequately, and correctly assess, diagnose and treat HUBER'S mental health condition and provide adequate medication and/or provide a medically supervised withdrawal from Klonopin.

46. During incarceration at ECHC, HUBER clearly displayed symptoms of benzodiazepine withdrawal and was not provided adequate medical treatment and medication. The worsening condition of HUBER over the course of her incarceration constituted a medical emergency and serious medical condition necessitating medication, treatment and hospitalization.

47. Between January 24, 2018 and February 6, 2018, HUBER displayed evident behaviors and visible symptoms that she had a serious medical need which was going untended. Such dangers of benzodiazepine withdrawal are commonly known within the medical field to the point where warnings of such withdrawals are written on the boxes of the drugs themselves for when they are prescribed. Had any of the above-referenced Defendants acted with a minimum degree of the care and skill expected within the profession, Plaintiff HUBER would have received either the benzodiazepines she was prescribed, or a plan to properly withdraw from said

10

drugs. However, due to the deliberate indifference of the above-referenced Defendants, Plaintiff nearly died, and but for numerous lifesaving treatments, she would have. For absolutely no good faith or medical basis, all Defendants came to the baseless conclusion that Plaintiff was malingering, despite the fact that Benzodiazepine withdrawal is a known medical condition, and her signs of withdrawal were readily apparent.

### FIRST CAUSE OF ACTION - 42 U.S.C. 1983 AGAINST DEFENDANTS ERIN BURCH, SHANNON STEVENSON, CHRISSY SCOTT, MELISSA MULDOON, CALLY GRAHAM, CYNTHIA MULLER, RN, KEVIN BUGMAN, RN, <u>KRISTINA KRTANJEK, NP and TOM CHAPIN, PNP</u>

48. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 47" of this Complaint with the same force and effect as if fully set forth herein.

49. At all times hereinafter mentioned Defendants were state actors acting under color of law of a statute, ordinance, regulation, custom, or usage of the laws of New York State with respect to the care and treatment of Plaintiff HUBER while an inmate in the ECHC.

50. As set forth in the above narrative, as a result of the deliberate indifference towards Plaintiff's medical needs hereinbefore described by the above-named Defendants, Plaintiff HUBER sustained severe bodily injuries which ultimately led to her hospitalization from February 6, 2018 to February 23, 2018. Due to the deliberate indifference to her medical needs as evinced above, HUBER sustained great pain and suffering as well as physical and mental anguish. Plaintiff still suffers from the effects of her near-death experience to this day.

51. Said Defendants, individually and/or jointly and severally, through their agents, servants, employees, associates and/or contractors as well as the staff and personnel under the direction of the Defendants, deprived adequate medical treatment to Plaintiff; had knowledge and knew of Plaintiff's condition, and consciously disregarded the same while she was a patient at ECHC.

52. Upon information and belief, the incident hereinbefore described and the resultant injuries and damages were caused as a result of the deliberate indifference, negligent, careless, reckless and/or unlawful conduct on the part of the Defendants and by their agents, servants and/or employees, more particularly, by inflicting serious physical and mental injury upon Plaintiff in failing and omitting to ensure Plaintiff was provided and supplied with necessary and proper medical care.

## SECOND CAUSE OF ACTION - 42 U.S.C. § 1983 MONELL CLAIM AGAINST THE COUNTY OF ERIE, SHERIFF TIMOTHY HOWARD AND UPPI

53. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through " 52" of this Complaint with the same force and effect as if fully set forth herein.

54. Municipal Defendants COUNTY of ERIE and HOWARD are liable in a theory of *respondeat superior* due to the policies, customs, and practices of the aforementioned defendants in the ECHC.

55. Upon information and belief, the incident hereinbefore described and the resultant injuries and damages were caused as a result of the negligent, careless, reckless and/or unlawful conduct on the part of the Defendants COUNTY, SHERIFF HOWARD, UPPI, ERIE COUNTY MEDICAL CENTER CORPORATION, UNIVERSITY EMERGENCY MEDICAL SERVICES, INC., and or by their agents, servants and/or employees, more particularly, by inflicting serious physical injury upon plaintiff, in failing to appropriately supervise and observe plaintiff while she was incarcerated; in failing and omitting to make and undertake proper safeguards for care and protection of the decedent; in failing and omitting to ensure decedent was provided and supplied with necessary and proper medical care; in failing and omitting to ensure decedent was provided with adequate sustenance and hydration, in failing and omitting to have comprehensive policies, procedures and/or guidelines established and in place to prevent deaths of inmates and in failing to properly train and monitor their agents, servants and/or employees with respect to the proper handling, supervision and monitoring of inmates; permitting a practice

so persistent and widespread at the ECHC that it constituted a custom of which decisionmakers and policymakers of ERIE COUNTY, UPPI, and HOWARD had at least constructive knowledge, and or the failure of the COUNTY, UPPI, and HOWARD to properly train or supervise their subordinates in what amounts to deliberate indifference to the rights of those who came into contact with their employees, subordinates, agents, servants, and others.

56. Defendant HOWARD, by policies and/or customs, and/or widespread practices, and/or failed to train his subordinates such that HOWARD was constructively and/or actually aware of the incidents that occurred at the ECHC that HUBER was subjected to cruel and inhuman treatment, deprived of the minimal measure of life's necessities, and that such policies, procedures, practices, customs, and failure to train by HOWARD such that deliberate indifference was manifested towards HUBER, depriving and infringing upon her Constitutional rights, permitting HUBER to spend 12 days in the Holding Center withdrawing from and without her needed and prescribed medication , and said subordinates, per policy, custom, practice, or failure to train expected and required inmates, such as HUBER to go without her basic medical needs being attended to, to the point where HUBER suffered unconscionable pain and almost died.

57. Defendant COUNTY promulgated policies, procedures, failed to train and permitted practices by its subordinates at the ECHC, including FMH, medical staff and its other subordinates that permitted HUBER to remain in the above-described conditions, ignoring her medical needs while her medical conditon deteriorated to the point she nearly died, without requiring subordinates to intervene or take steps to remove a seriously ill inmate and patient from such cruel and inhumane conditions.

58. The COUNTY and/or HOWARD are and were aware of deficiencies in training, staffing,and medical care, particularly mental health care, in ECHC by virtue of United States v. Erie County, 1:09-cv-00849-WMS-JJM, which required continued monitoring in the ECHC and Erie County Correctional Facility pursuant to a Stipulated Order of Dismissal. Such settlement is attached hereto as Exhibit A to this complaint. ERIE COUNTY and HOWARD are documented to be not fully compliant with all policies and procedures and the noted custom and practice of staff shortages, incomplete medical documentation and medication administration, delays in

nurse and provider visits, absence of required visits by licensed practitioners, failure to routinely take vital signs and noted non-compliance with review of inmate clinical care by a responsible physician.

59. The COUNTY and or HOWARD were at least constructively aware of widespread and persistent wrongful practices by their subordinates, and or their failure to train their subordinates, and that practices, including rampant and numerous NYCRR violations, as stated above, were permitted by HOWARD and or the COUNTY to continue unchecked, amounting to the deliberate indifference of the COUNTY and HOWARD.

60. Recent examples of the same include the treatment endured by India Cummings. Ms. Cummings entered the ECHC on February 1, 2016 suffering from severe physcal and mental disorders, and needed emergent care. Instead, Ms. Cummings' medical needs were negelcted in their entirety, and she was left to wallow in her own waste over the course of 16 days as her medical condition continued to deteriorate. Ultimately, on February 17, Cummings went into complete organ failure, and experienced, among other things, cardiac arrest, severe dehydration, and malnutrition. It was then that she was rushed to Buffalo General Hospital to receive medical care… but by then it was too late. Cummings died as a result of the deliberate indifference to her medical needs as exhibited by Erie County Holding Center emplyees and/or agents, all under the supervision of Erie County and HOWARD. Attached hereto as Exhibit B to this complaint is a copy of a detailed report by the Commission of Corrections into her death, which reveal the widepsread patterns and practices of deliberate indifference towards medical care as perpetuated by the Defendants and their agents, and such practices were the driving force behind Plaintiff's Constitutional infirmities.

61. Another recent example of the Defendants pattern or pratice of deliberate indifference to one's serious medical needs, in violation of the Due Process Clause of the 14th Amendment, is the indifference shown by medical staff at the ECHC in August, 2015 to Antwan Green. Green presented to the ECHC medical unit with bumps on or around his right eye. These bumps were causing him blurry vision along with pain and swelling. ECHC nurses, as opposed to treating Green, insulted him about his race and sexual orientation. The lack of any kind of

treatment caused the condition to deteriorate, and Green suffered permanent impairment of his vision as a result thereof.

62. Further, it is also a pattern or practice of Defendants County of Erie and Defendant Howard, as evinced by what occurred to Plaintiff HUBER, Decedent Cummings, and Antwan Green to disregard 9 NYCRR § 7010.1(b). Such rule requires prompt screening to identify serious or life-threatening medical conditions requiring immediate evaluation and treatment. Such rule is routinely disregarded by agents of said above-named Defendants, often causing deaths or, in the case of Plaintiff HUBER, serious injury, substantial conscious pain and suffering, and a grave risk of imminent death.

63. Furthermore, at the ECHC, under the COUNTY and or HOWARD, UPPI was and is a private entity so entwined with governmental policies or so impregnated with a governmental character as to become subject to constitutional limitations placed upon state action, in the provision of medical care to those within the custody of HOWARD and or the COUNTY at the ECHC. It was a matter of UPPI practice, policy, actions, and or failures in its functions at the ECHC in permitting its staff, including CHAPIN and any other UPPI employees listed above to rely upon HOWARD's staff, Sergeants, Deputies, Lieutenants, Captains and others in its reliance upon the constant observation and Logbook which was an incomplete record of inmate activity containing substantial and material omissions, to rely upon the results of interdisciplinary meetings and minutes where such communications were typically not transmitted or shared such as to result in a failure of communication to the necessary medical personnel necessary to render adequate medical and or mental health treatment to inmates at the ECHC. Further, it was a formal policy, practice, action, and or failure of UPPI sounding in deliberate indifference to rely upon the information, actions, and referrals by COUNTY employees, agents, and servants in undertaking care of inmates at the ECHC, including HUBER, where communication failures, and NYCRR violations were so frequent and rampant that UPPI policy and decisionmakers had at least constructive notice of the same and their continued reliance upon these systemic failures and the unreliability of the COUNTY and /or HOWARD employees, agents, servants and others constituted negligence, and or reckless, and or gross negligence, and or deliberate indifference of UPPI, in violation of the Fourteenth Amendment rights guaranteed to HUBER by the Federal Constitution.

64. The above-referenced municipal pattern or practices were the driving force behind the serious and permanent injuries, conscious pain and suffering, and near death experience(s) that befell Plaintiff HUBER.

### THIRD CAUSE OF ACTION - MEDICAL MALPRACTICE
### AGAINST ALL DEFENDANTS

65. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through 64 of this Complaint with the same force and effect as if fully set forth herein.

66. The Defendants, individually and/or jointly and severally, through their agents, servants, employees, associates and/or subcontractors had a duty to provide medical care to Plaintiff while she was incarcerated in the ECHC.

67. Upon information and belief, all Defendants, are liable both individually, collectively, as well as under a theory of respondeat superior for the lack of adequate medical care afforded Plaintiff HUBER.

68. COUNTY, UPPI, AND/OR CHAPIN, individually and/or jointly and severally, through their agents, servants, employees, associates and/or subcontractors, carelessly and negligently rendered medical care and treatment to the decedent while incarcerated at ECHC, which care and treatment was not in accordance with good and accepted medical practice.

69. Upon information and belief, at all times herein mentioned, above-mentioned Defendants named in this cause of action, individually and/or jointly and severally, through their agents, servants, employees, associates and/or subcontractors, were negligent and committed acts of medical malpractice in the rendition of services to Plaintiff HUBER.

70. Upon information and belief, at all times herein mentioned, all above-mentioned defendants named in this cause of action individually and/or jointly and severally, through their agents, servants, employees, associates and/or subcontractors, failed to exercise due and reasonable care under the circumstances in care and treatment to Plaintiff HUBER so as to avoid injury, and

failed to properly, adequately and correctly assess, diagnose and treat HUBER'S condition; deviated from good, known and accepted medical practice in the care and treatment of HUBER; deviated from the usual and accepted practice and skill ordinarily possessed by and required of physicians and failed and omitted to prevent the incident, which by the exercise of accepted medical practice and due and reasonable care, could and should have been prevented.

71. As a result of the alleged incident hereinbefore described Plaintiff HUBER sustained severe bodily injuries which ultimately led to her hospitalization from February 6 to February 23, 2018 in which she sustained great pain and suffering as well as physical and mental anguish.

### FOURTH CAUSE OF ACTION – EXCESSIVE FORCE AGAINST DEFENDANT BUGMAN

72. To establish a claim for excessive force, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Cass v. City of Abilene, 814 F.3d 721, 731 (5th Cir. 2016).

73. Plaintiff HUBER, was already in a depleted and severe condition when, on January 27, 2018, on her way back to constant ops, she went limp and dropped to the floor.

74. She was still conscious when Defendant Bugman, for no legal basis, exercised force by kicking her in her head and told her to "stop faking."

75. Such an action caused HUBER additonal pain in the form of brusing and swelling to her cranial region.

76. Such actions were excessive to the need at hand, occurred while Plaintiff was seized in that she was incarcerated, and violated Plaintiff's Fourth Amendment rights to be free from such force during seizure pursuant to the U.S. Constitution.

77. Plaintiff demand costs and attorney fees pursuant to 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief, as follows:

    a. For general damages in a sum according to proof;

    b. For special damages in a sum according to proof;

    c. For punitive damages against the individually named Defendants in a sum according to proof;

    d. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

    e. For any and all statutory damages allowed by law;

    f. For costs of suit herein incurred; and

    g. For such other and further relief as this Court deems just and proper.

DATED:    June 17, 2020
               Buffalo, New York

By: */s/ Matthew Albert*
The Law Offices of Matthew Albert, Esq.
Attorney for Plaintiff
2166 Church Rd.
Darien Center, New York 14040
(716) 445-4119
mattalbertlaw@gmail.com