UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA HUBER,                                                    DECISION
                                                                      and
                              Plaintiff,                           ORDER

                  v.
                                                          20-CV-00748V(F)

COUNTY OF ERIE,
ERIE COUNTY SHERIFF TIMOTHY B. HOWARD,
ERIN BURCH, Psychologist,
SHANNON STEVENSON,
CHRISSY SCOTT,
MELISSA MULDOON,
CALLY GRAHAM,
CYNTHIA L. MULLER, RN,
KEVIN BUGMAN, RN,
KRISTIN KRTANJEK, NP,
TOM CHAPIN, PNP, and
UNIVERSITY PSYCHIATRIC PRACTICE, INC.,

                              Defendants.
_____

APPEARANCES:    THE PHOENIX LAW GROUP PLLC
                Attorneys for Plaintiff
                FARES A. RUMI, of Counsel
                2166 Church Road
                Darien Center, New York  14040

                MICHAEL A. SIRAGUSA
                ERIE COUNTY ATTONREY
                Attorney for Defendants Erie County, Sheriff Howard,
                  Stevenson, Scott, Muldoon, Graham, Krtanjek, and Bugman
                JEREMY C. TOTH, Assistant County Attorney, of Counsel
                95 Franklin Street, Room 1634
                Buffalo, New York  14202

                GIBSON, McASKILL & CROSBY, LLP
                Attorneys for Defendant Chapin
                CRAIG R. WATSON, and
                KATHLEEN MARIE SWEET, of Counsel
                69 Delaware Avenue, Suite 900
                Buffalo, New York  14202-3866

## JURISDICTION

This case was referred to the undersigned by Honorable Lawrence J. Vilardo on July 27, 2020, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on County Defendants' First Motion to Dismiss for Failure to State a Claim, filed July 24, 2020 (Dkt. 6), County Defendants' Second Motion to Dismiss for Failure to State a Claim, filed August 27, 2020 (Dkt. 14), Plaintiff's First Motion to Amend/Correct Complaint, filed August 30, 2020 (Dkt. 16), and Defendant Chapin's Motion to Dismiss the Complaint and First Amended Complaint, filed September 9, 2020 (Dkt. 19).

## BACKGROUND

Plaintiff Jessica Huber ("Plaintiff") commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of her Fourteenth Amendment rights, as well as common law negligence and malpractice claims against Defendants County of Erie ("the County"), Erie County Sheriff Timothy B. Howard ("Howard"), Shannon Stevenson ("Stevenson"), Chrissy Scott ("Scott"), Melissa Muldoon ("Muldoon"), Cally Graham ("Graham"), Kevin Bugman, RN ("Bugman"), and Kristina Krtanjek, NP ("Krtanjek") (together, "County Defendants"), as well as psychologist Erin Burch ("Dr. Burch"), Cynthia Muller, RN ("Muller"), Tom Chapin, PNP ("Chapin"), and University Psychiatric Practice, Inc. ("UPPI").[1]  Plaintiff's claims pertain to an alleged denial of appropriate medical care while in the custody of Defendant County, including failure to provide Plaintiff with necessary medications Plaintiff was prescribed for various ailments

---

[1] According to the docket, Dr. Burch, Muller, and UPPI were never served and have yet to appear in this action.

including depression, bipolar disorder, and anxiety, as well as hypertension, hyperlipidemia, and a seizure disorder, and unreasonable use of force, resulting in physical and psychological harm.  All those named as Defendants have been served and appeared in this action through counsel with the exception of Burch, Muller, and UPPI.

On July 24, 2020, County Defendants filed a motion to dismiss for failure to state a claim (Dkt. 6) (County Defendants' First Motion to Dismiss"), attaching the Declaration of [Assistant County Attorney][2] Jeremy C. Toth in Support of Defendants' Motion to Dismiss (Dkt. 6-1) ("First Toth Declaration"), with Exhibit A (Dkt. 6-2), and the Memorandum of Law in Support of Defendants' Motion to Dismiss (Dkt. 6-3) ("County Defendants' Memorandum").  Plaintiff did not oppose County Defendants' First Motion to Dismiss but, instead, filed on August 16, 2020, an amended complaint without leave of the court (Dkt. 12) ("reputed amended complaint" or "RAC")).  The reputed amended complaint does not include any new defendants and is essentially identical to the Complaint, but for additional factual allegations clarifying that the alleged medical condition afflicting Plaintiff was benzodiazepine withdrawal, and a newly asserted claim for failure to intervene.  On August 27, 2020, County Defendants filed a motion to dismiss the reputed amended complaint (Dkt. 14) ("County Defendants' Second Motion to Dismiss"), attaching the Declaration of [Assistant County Attorney] Jeremy C. Toth in Support of Defendants' Motion to Dismiss First Amended Complaint (Dkt. 14-1) ("Second Toth Declaration"), with Exhibit A (Dkt. 14-2).

---

[2] Unless otherwise indicated, all bracketed material has been added.

On August 30, 2020, Plaintiff filed a motion for leave to amend the Complaint (Dkt. 16) ("Plaintiff's Motion to Amend"), attaching four exhibits (Dkts. 16-1 through 16-4), including a proposed amended complaint (Dkt. 16-1) ("proposed amended complaint" or "PAC").  Plaintiff also filed on August 30, 2020, the Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. 17) (Plaintiff's First Response to County Defendants"), attaching two additional exhibits (Dkts. 17-1 and 17-2).  On September 9, 2020, Defendant Chapin filed a motion to dismiss the Complaint and the reputed amended complaint (Dkt. 19) ("Chapin's Motion to Dismiss"), attaching the Attorney Affidavit of Craig R. Watson, Esq. (Dkt. 19-1) ("First Watson Affidavit"), two exhibits (Dkts. 19-2 and 19-3), and a Memorandum of Law (Dkt. 19-4) ("Chapin's Memorandum").

On September 21, 2020, County Defendants filed the Declaration of [Assistant County Attorney] Jeremy C. Toth in Opposition to Plaintiff's Motion to Amend Complaint (Dkt. 21) ("Third Toth Declaration").  On September 24, 2021, Defendant Chapin filed the Attorney Declaration of Craig R. Watson (Dkt. 22) ("Second Watson Affidavit"), attaching exhibits A through C (Dkts. 22-1 through 22-3).  On September 30, 2020, Plaintiff filed the Reply Declaration [of Matthew Albert, Esq.] for Plaintiff's Motion to Amend Her Complaint (Dkt. 23) ("Albert Declaration").  On October 10, 2020, Plaintiff filed the Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. 24) ("Plaintiff's Second Response to County Defendants").  On October 27, 2020, Defendant Chapin filed the Attorney Reply Declaration of Craig R. Watson, Esq. (Dkt. 25) ("Third Watson Affidavit"), and the Reply Memorandum of Law (Dkt. 25-1) ("Chapin's Reply").  Oral argument was deemed unnecessary.

Based on the following, County Defendants' First Motion to Dismiss is DISMISSED as moot; Defendants' Second Motion to Dismiss is DISMISSED as moot; Plaintiff's Motion to Amend is GRANTED in part and DENIED in part; Defendant Chapin's Motion to Dismiss is DISMISSED as moot.

## **FACTS**[3]

On January 24, 2018, Plaintiff Jessica Huber ("Plaintiff"), entered into the custody of Defendants Erie County ("the County"), and Erie County Sheriff Timothy B. Howard ("Howard"), when Plaintiff was arrested for a probation violation and transported to the Erie County Holding Center ("ECHC") in Buffalo, New York.  Upon arriving at ECHC, Plaintiff underwent an Intake Screening with Defendant Cynthia Muller, RN ("RN Muller"), during which Plaintiff advised she was taking several prescriptions drugs for depression, anxiety, and bipolar disorder including, *inter alia*, Klonopin,[4] which Plaintiff regularly took three times a day and took the drug that day.  Plaintiff also provided a list of her medications to Muller who then sent Plaintiff for a "detox evaluation" regarding Klonopin.  Later on January 24, 2018, Plaintiff underwent a Mental Health Assessment and Admissions Screening at ECHC with Defendant Shannon Stevenson ("Stevenson"), during which Plaintiff advised she had been prescribed Klonopin since 2018 and her health would  be negatively affected without the drug.  On January 25, 2018, Plaintiff underwent a detox evaluation at ECHC with Defendant Kristina Krtanjek, NP

---

[3] Taken from the pleadings and motion papers filed in this action.
[4] "Klonopin" is the brand name version of "clonazepam" which is a "benzodiazepine" drug (nervous system depressant), and a controlled substance approved for treatment of panic and seizure disorders. *See* Clonazepam (Klonopin), *available at:* https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Clonazepam-(Klonopin) (last visited August 17, 2021).  The court, like the parties, uses these terms interchangeably based on the context.

("Krtanjek"), who reviewed Plaintiff's medical history and medications and then cleared Plaintiff from detox without either arranging for Plaintiff to receive Klonopin as previously prescribed or to wean Plaintiff off the medication.  In the evening of January 25, 2018, one Michael Carr, LPN ("Carr"),[5] provided Plaintiff with Ibuprofen (nonsteroidal, anti-inflammatory analgesic), but no other medications.

In the morning of January 26, 2018, Carr provided Plaintiff with additional medications, including Minipress (blood pressure), Topiramate (anti-seizure), Risperdal (antipsychotic medication for treatment of schizophrenia and bipolar disorder), and Ibuprofen.  In the evening of January 26, 2018, Plaintiff was administered additional medications by Amy Prieur, LPN ("Prieur"),[6] including Metoprolol Succinate ER (blood pressure), Ibuprofen, CVS Omeprazole (gastroesophageal reflux disease or "GERD"), Topiramate, and Welchol (high cholesterol).  Other of Plaintiff's previously prescribed medications, including Clonazepam, Trintellix (antidepressant), Seroquel IR (schizophrenia), Trazadone (antidepressant), Lyrica (fibromyalgia and neuropathy), and Metoprolol ER (blood pressure), were discontinued.  Also on January 26, 2018, Plaintiff met with Defendant psychologist Erin Burch ("Dr. Burch"), to whom Plaintiff reported she was in pain from fibromyalgia, was having migraines and difficulty sleeping, had a poor appetite, and was having vague suicidal ideation, and also complained that she was not being given all her prescribed medications.  The focus, for purposes of this discussion, is on the clonazepam Plaintiff was prescribed.

---

[5] Carr is not a defendant to this action.
[6] Prieur is not a defendant to this action.

On January 27, 2018, Plaintiff underwent a mental health evaluation at ECHC with Defendant Cally Graham ("Graham"),[7] to whom Plaintiff complained she was not receiving all of her prescribed medications, advising she felt a "manic episode coming" based on symptoms of feeling "on edge" and difficulty sleeping, which Plaintiff recognized as benzodiazepine withdrawal based on a previous episode which left Plaintiff in a catatonic state for five days.  Complaint ¶ 24.  Following the evaluation with Graham, Plaintiff, while being escorted to ECHC's "Constant Observation Unit," became lightheaded and collapsed.  Plaintiff was found to be "largely unresponsive to medical and security staff questions," *id.* ¶ 26, yet responding registered nurse Defendant Kevin Bugman ("Bugman"), allegedly kicked Plaintiff in the head and told her to "quit faking." *Id.* ¶ 27.  Plaintiff was then transported by wheelchair to an examination at ECHC by Defendant Krtanjek who advised Plaintiff to increase her fluids consumption and follow-up as needed.

On January 28, 2018, Plaintiff underwent a mental health evaluation at ECHC with Defendant Chrissy Scott ("Scott"),[8] to whom Plaintiff complained her medications were not being properly regulated by ECHC.  Scott reported Plaintiff presented with a depressed mood and flat affect, and stated she had much pain and was not sleeping, all symptoms which Plaintiff alleges are known symptoms of benzodiazepine withdrawal.

On January 30, 2018, Plaintiff had a psychiatric medication consult at ECHC with Defendant Tom Chapin, PNP ("Chapin"), who is employed by UPPI, not the County, and whom Plaintiff informed of her history of bipolar disorder, anxiety, and depression, as well as that Plaintiff had been treating with a psychiatrist and had manic episodes.

---

[7] Graham's position at ECHC is not described.
[8] Scott's position at ECHC is not in the record.

Chapin listed the medications Plaintiff was prescribed while at ECHC which did not include Clonazepam.

On February 2, 2018, Plaintiff had a comprehensive suicide risk assessment at ECHC with Graham who noted Plaintiff's treatment for various mental health conditions including bipolar.  Although at the beginning of the assessment Plaintiff was coherent, as the assessment progressed, Plaintiff reported being light-headed and did not know where she was.  Graham noted that Plaintiff was exaggerating her condition to feign mental health and medical symptoms.

On February 3, 2018, Defendant Melissa Muldoon ("Muldoon"),[9] made a Constant Observation Progress Note at ECHC that Plaintiff presented as drowsy and with very slow speech.  When asked where she was, Plaintiff did not know and presented with impaired judgment.

On February 4, 2018, Scott engaged in a Constant Observation Progress interview at ECHC with Plaintiff, noting Plaintiff presented with poverty of speech, reported not sleeping well, and was having panic attacks.

On February 6, 2018, Plaintiff was found on the floor of her ECHC cell after falling off her bed.  Plaintiff was unable to verbally respond and her pupils were dilated and unresponsive bilaterally.  Plaintiff was transported to ECHC's Delta medical unit where she had a seizure lasting an entire minute with full body jerking, urine incontinence, and drooling.  Plaintiff also was tachycardiac (rapid heart rate), with depleted oxygen saturation levels.  Nurse practitioner Jasmine Richardson ("Richardson")[10] called for an ambulance and while awaiting its arrival, Plaintiff had

---

[9] Muldoon's position at ECHC is not in the record.
[10] Richardson is not a defendant to this action.

another seizure lasting one minute and 45 seconds, her eyes were dilated, and Plaintiff was unresponsive.  Plaintiff was transported by ambulance to Erie County Medical Center ("ECMC"), in Buffalo, New York, where she was admitted and remained hospitalized until February 23, 2018.

While at ECMC, Plaintiff was reported as incontinent, nonverbal, cyanotic (bluish discoloration of the skin and mucous membranes caused by depleted blood oxygen), tachycardiac, and unresponsive.  Plaintiff was intubated and placed in ECMC's Trauma Intensive Care Unit ("TICU").  Attending ECMC physician Harsha Yedlapati noted that prior to being admitted to ECMC, Plaintiff had not taken Klonopin for three weeks and that Plaintiff's seizures were consistent with benzodiazepine withdrawal.  ECMC physician Mohammadreza Azadfard started Plaintiff on a medically managed detox program to wean Plaintiff off clonazepam.  On February 9, 2018, Plaintiff's core body temperature dropped and a warming blanket medical device was used to raise her temperature, yet Plaintiff was minimally responsive, on a full ventilator, and in acute respiratory failure with acute encephalopathy (brain disease, damage, or malfunction), seizures, and presumed aspiration pneumonia (caused by breathing foreign objects into the lungs or airways).

Plaintiff maintains that Defendants were deliberately indifferent to Plaintiff's medical condition, which included commonly known symptoms of benzodiazepine withdrawal, and arrived, without any factual or medical reason, at the baseless conclusion that Plaintiff was a malinger or was feigning psychiatric illness.  Plaintiff further maintains that but for numerous lifesaving treatments, Plaintiff would have died from benzodiazepine withdrawal.

**DISCUSSION**

**1.    Motions to Dismiss**

In the original Complaint, Plaintiff asserted four claims for relief including (1) a

§ 1983 claim for medical indifference against Defendants Dr. Burch, Stevenson, Scott,

Muldoon, Graham, Muller, Bugman, Krtanjek, and Chapin (together, "Medical

Defendants")[11] ("First Claim" or "medical indifference claim"); (2) a § 1983 claim against

Defendants County, Howard, and UPPI pursuant to *Monell v. Dep't of Soc. Servs. of

City of N. Y.*, 436 U.S. 658, 690–92 (1978) ("*Monell*") asserting liability for the alleged

unconstitutional action resulting from an official policy, practice, or custom, based on a

theory of *respondeat superior* ("Second Claim" or "*Monell* claim"); (3) a medical

malpractice claim under New York common law against the Medical Defendants ("Third

Claim" or "malpractice claim"); and (4) an § 1983 excessive force claim against

Defendant Bugman ("Fourth Claim" or "excessive force claim").  In the RAC, Plaintiff

named the same Defendants, asserted additional factual allegations and alleged a fifth

claim against the Medical Defendants for failing to intervene ("Fifth Claim" or "failure to

intervene claim").  The PAC is essentially identical to the RAC, asserting the same

claims against the same Defendants as in the RAC, but includes several additional

allegations, attaches two exhibits, and is redlined to indicate the changes from the

original Complaint.  Such redlining is not included in the RAC.  The two exhibits

attached to the PAC include the Civil Rights Division's Investigation of the Erie County

Holding Center and the Erie County Correctional Facility issued by the United States

---

[11] Unlike the other Medical Defendants, all of whom are alleged to be employees of Defendant County, Complaint ¶¶ 5-12, Defendant Chapin is alleged to be an employee of Defendant UPPI, which is alleged to be a New York non-profit corporation with whom the County contracted to provide medical care and treatment to inmates at ECHC.  Complaint ¶ 14.

Department of Justice on July 15, 2009 (Dkt. 16-3) ("Attorney General's Report"), and

the Final Report of the New York State Commission of Correction: In the Matter of the

Special Investigation into the Care and Treatment Provided to India Cummings, an

inmate of the Erie County Holding Center, issued on June 26, 2018 (Dkt. 16-4)

("Commission Report") (together, "governmental investigative reports").

County Defendants move to dismiss the original Complaint for failure to state a

claim as well as the reputed amended complaint both as filed too late to be filed as of

right pursuant to Fed.R.Civ.P. 15(a)(1), and, alternatively, for the same reasons County

Defendants assert in support of dismissing the original Complaint.  Chapin moves to

dismiss the First and Fifth Claims in the reputed amended complaint, and to remand the

RAC's Third Claim to state court.  All three motions to dismiss, however, were rendered

moot once Plaintiff filed her motion for leave to file an amended complaint.  *See Wilson*

*v. Fabric Cellar, Inc*., 2021 WL 2942354, at * 2 (W.D.N.Y. July 13, 2021) ("When the

proposed amendment requires leave of court, 'the preferred course is to grant leave to

amend even if doing so renders moot the motion to dismiss, rather than granting the

motion to dismiss and rendering moot the motion for leave.'"  (quoting *Rheaume v*.

*Pallito*, 2015 WL 7300790, at * 2 (D.Vt. Oct. 2015) (emphasis omitted) (quoting *Roller*

*Brearing Co. v American Software, Inc.*, 570 F.Supp.2d 376, 384 (D.Conn. 2008)), and

citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002)

(reversing district court's denial of motion for leave to amend complaint and holding that

motion for leave rendered moot pending motion to dismiss, rather than vice versa))).

*See also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)

(instructing that when a plaintiff moves to file an amended complaint while a motion to

dismiss is pending, a court "may either deny [the] pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." (citing *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016))).  Further, "[a]s a general matter, amendments to the pleadings are favored in order to facilitate a resolution on the merits."  *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp*, 2003 WL 22218643, at *13 (S.D.N.Y. Sept. 25, 2003) (citing *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 573 (S.D.N.Y. 1999)).  Accordingly, County Defendants' First Motion to Dismiss, County Defendants' Second Motion to Dismiss, and Chapin's Motion to Dismiss are DISMISSED as moot.

Further, because the RAC and PAC are essentially identical, County Defendants filed papers indicating their arguments asserted in support of the Motions to Dismiss the Complaint and the Reputed Amended Complaint should be construed in opposing Plaintiff's Motion to Amend.  Third Toth Declaration ¶¶ 9-10.  Defendant Chapin acknowledges Plaintiff's filing of the Motion to Amend renders the RAC a nullity, but rather then requesting the court construe Chapin's motion papers filed in support of Chapin's Motion to Dismiss as opposing Plaintiff's Motion to Amend, requests that should the court permit Plaintiff to file and serve the PAC, then the court should consider Chapins arguments made in support of Chapin's Motion to Dismiss as asserted in support of dismissing the PAC   *See* Second Watson Affidavit ¶¶ 15-16; Third Watson Affidavit ¶ 10.  Given that both County Defendants and Chapin recognize the filing of Plaintiff's Motion to Amend render the RAC a nullity, in the interest of judicial economy, the court construes the arguments contained in the papers filed by the various Defendants as asserted in opposition to Plaintiff's Motion to Amend.

### 2.      Motion to Amend

With the dismissal of the three motions to dismiss, only Plaintiff's Motion to

Amend remains pending.  Plaintiff's Motion to Amend is governed by Fed.R.Civ.P. 15

("Rule 15__"), which, as relevant, provides "[t]he court should freely give leave when

justice so requires."  Fed.R.Civ.P. 15(a)(2).  *See Foman v. Davis*, 371 U.S. 178, 181

(1962) (leave to file an amended complaint "shall be freely given when justice so

requires.").  "[A]n amended pleading may be filed pursuant to Rule 15(a) where the new

allegations do not unduly prejudice an opponent, are not the result of undue delay or

bad faith, and are not futile."  *Warren v. Goord*, 2006 WL 1582385, at * 7 (W.D.N.Y. May

26, 2006).  Further, "[a]n amendment to a pleading is futile if it could not withstand a

motion to dismiss under Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of

Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  Accordingly, the arguments advanced

by County Defendants and Chapin in support of their respective motions to dismiss are

relevant to Plaintiff's Motion to Amend.  *See El-Shabazz v. State of New York

Committee on Character and Fitness for the Second Judicial Department*, 428

Fed.Appx. 95, at *1 (July 5, 2011) ("'When the plaintiff has submitted a proposed

amended complaint, the district judge may review that pleading for adequacy and need

not allow its filing if it does not state a claim upon which relief can be granted.'" (quoting

*Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).  In ruling on a

motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed

amended pleading, the court may consider only "the facts as asserted within the four

corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated into the complaint by reference."  *McCarthy v. Dun &

*Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The court thus addresses in turn each of the claims in the PAC.

### A.    Civil Rights Claim

Four of Plaintiff's five claims seek damages for alleged violations of her constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983, however, is not itself a source of substantive rights but, rather, provides the mechanism by which a plaintiff may seek vindication of federal rights elsewhere conferred.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Because Plaintiff was detained at ECHC on a violation of probation charge, Plaintiff was a pretrial detainee at all times relevant to her claims.  Additionally, for relief under § 1983, a plaintiff must establish the defendant was personally involved in the alleged deprivation.  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).

Furthermore, although Defendant Chapin is not a County employee but, rather, worked at ECHC pursuant to a contract between the County and UPPI, Chapin's employer, depending on the terms of the contract between the County and UPPI, which is not in the record, Chapin may be liable as a state actor under the so-called "public function test" if Chapin's conduct included employing powers "traditionally the exclusive prerogative of the State."  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (to be

considered a state actor under the public function test, the plaintiff must show the private party used powers "traditionally the exclusive prerogative of the State."). Generally, "[t]he provision of medical care to incarcerated prisoners is a public function, even if private physicians contract with the government to provide those services." *Young v. Halle Hous. Assoc., L.P.*, 152 F.Supp.2d 355, 365 (S.D.N.Y. 2001). The underlying rationale for this conclusion is that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Nevertheless, where a defendant physician treats prison inmates, it is "the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State in a suit under § 1983." *Doe v. Torres*, 2006 WL 290480, at * 9 (S.D.N.Y. Feb. 8, 2006). Although Chapin is a nurse practitioner, rather than a physician, and provided medical services to Plaintiff at ECHC, rather than in a state correctional facility, courts within the Second Circuit have applied the "public function test" in circumstances similar to the instant case. *See Burgess v. County of Rennselaer*, 2006 WL 3729750, at * 4 (N.D.N.Y. Dec. 18, 2006) (concluding defendant nurse working at county jail pursuant to the county jail's contract with the defendant's employer could be held liable under § 1983 as a state actor).

### 1. Deliberate Indifference

In the proposed amended complaint, Plaintiff claims each of the Medical Defendants was deliberately indifferent to her serious medical needs when, despite Plaintiff advising she had been regularly taking Clonazepam since 2016, and exhibiting symptoms of benzodiazepine withdrawal, the Medical Defendants failed to take

seriously Plaintiff's complaints that she was being denied her prescribed medication for her mental health conditions resulting in Plaintiff experiencing life-threatening benzodiazepine withdrawal.  County Defendants argue the facts asserted in the proposed amended complaint, even if true, fail to establish the requisite deliberate indifference to find County Defendants liable for medical indifference to the serious medical situation posed by Plaintiff's benzodiazepine withdrawal.  County Defendants' Memorandum at 4-8.  Defendant Chapin maintains this claim is insufficient because it challenges Chapin's exercise of medical judgment on a single occasion, *e.g.*, the January 30, 2018 psychiatric medication consultation, which can establish, at most, negligence but cannot establish the deliberate indifference necessary to support the claim.  Chapin's Memorandum at 5-9; Chapin's Reply, at 2-4.

Because at the time of the events relative to this claim, Plaintiff was being held in the ECHC as a pretrial detainee, her deliberate indifference claim is analyzed according to the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (recognizing unconstitutional conditions of confinement claims brought by pretrial detainees are correctly analyzed under the Fourteenth Amendment); *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) ("[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the . . . Fourteenth Amendment if held in state custody."), *overruled on other grounds by Darnell*, 849 F.3d at 35-36.  This is because "'[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually or otherwise.'"  *Darnell*, 849 F.3d at 29

(quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (further citation and quotation marks omitted)).  In the instant case, the PAC does not fail to sufficiently establish the requisite deliberate indifference required for a plausible Fourteenth Amendment violation based on the benzodiazepine withdrawal Plaintiff endured as a result of Medical Defendants' alleged conduct.

To state a Fourteenth Amendment claim for medical indifference, a pretrial detainee need plead only "facts 'showing that she had a serious medical condition and that it was met with deliberate indifference.'"  *Bruno v. City of Schenectady*, 727 Fed.Appx. 717, 720 (2d Cir. 2018) (internal quotation marks and citation omitted).  In particular relevance here, the first prong of a deliberate indifference claim based on an alleged denial of adequate medical treatment requires the plaintiff suffer from "'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  *Id.* (quoting   *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).  Here, Plaintiff's benzodiazepine withdrawal satisfies this prong for a Fourteenth Amendment deliberate indifference claim. *See Caiozzo*, 581 F.3d at 72 (considering alcohol withdrawal a condition of urgency); *Pusateri v. City of Dunkirk*, 2021 WL 3160768, at * (W.D.N.Y. July 27, 2021) (recognizing opiate withdrawal can present a condition of urgency); *Stojcevski v. County of Macomb*, 2019 WL 4744432, at *12 (E.D.Mich. Sept. 30, 2019) (denying summary judgment to defendant county jail officials who failed to properly treat defendant inmate for benzodiazepine withdrawal).  The second prong is "whether a 'reasonable person' would appreciate the risk to which the detainee was subjected." *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29, 33-35 (2d Cir. 2017)).  Toward this end, the PAC contains numerous allegations that Plaintiff

repeatedly advised each Medical Defendant she had been regularly taken benzodiazepine, *see*, *e.g.*, PAC ¶¶ 17-19 (alleging Plaintiff, during her Intake Screening at ECHC on January 24, 2018, both told Muller of the prescription medications Plaintiff took and provided Muller with a list of such medications which list included*, inter alia*, Clonazepam), and that Plaintiff was observed by various Defendants with symptoms Plaintiff maintains are commonly recognized as consistent with benzodiazepine withdrawal.  *See*, *e.g.*, PAC ¶ 24 (while meeting with Dr. Burch on January 26, 2018, Plaintiff complained of migraines, difficulty sleeping, poor appetite, and vague suicidal ideation, that she was not being provided with her medications, and that she feared she would going into benzodiazepine withdrawal), ¶ 25 (during January 27, 2018 mental health evaluation with Graham, Plaintiff advised she sensed a "manic episode coming"), and ¶ 29 (during January 28, 2018 mental health evaluation with Scott, Plaintiff was noted to present with depressed mood, flat affect, was in pain, and not sleeping, and Plaintiff advised she was undergoing benzodiazepine withdrawal because she had not been provided with Clonazepam).  Accordingly, the PAC contains sufficient factual allegations plausibly establishing in accordance with *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (requiring complaint state a claim with "facial plausibility" to survive motion to dismiss), the circumstances confronting the Medical Defendants were sufficient for a reasonable person to appreciate the risk to which Plaintiff was subjected based on benzodiazepine withdrawal. *Bruno*, 727 Fed.Appx. at 720.  The PAC thus states a medical indifference claim against Medical Defendants based on Plaintiff's benzodiazepine withdrawal.  Plaintiff's Motion to Amend is GRANTED with regard to Plaintiff's Fourteenth Amendment medical indifference claim.

2.    *Monell*

Plaintiff asserts in the proposed amended complaint that Defendants County and Howard[12] engaged in widespread and persistent practice of denying inmates medical care because other ECHC inmates have suffered medical episodes, PAC ¶¶ 83-85, attaching as exhibits several reports indicating ECHC has been the subject of investigations (Dkt. 16-2), by the United States Department of Justice (Dkt. 16-3), and New York State Commission of Correction regarding the death of another inmate, one India Cummings ("Cummings") (Dkt. 16-4).  In opposition to Plaintiff's Motion to Amend, County Defendants argue that the other inmates Plaintiff identifies in the proposed amended complaint as also having been subjected to medical indifference while incarcerated at ECHC did not endure any prescribed medication withdrawal, County Defendants' Memorandum at 10, and the governmental investigative reports on which Plaintiff relies do not substantiate that County Defendants were acting pursuant to any policy.  *Id*. at 10-13.

Although a municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*, a § 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice, or custom.  *Monell*, 436 U.S. at 690–92.  "[A] plaintiff also must establish an 'affirmative' causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." *Dumel v. Westchester Cnty.*, 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021).  "[T]o

---

[12] Plaintiff also asserts her *Monell* claim against UPPI which has not been served and has yet to appear in this action.  The court also notes Plaintiff refers to ECHC as a defendant in asserting the *Monell* claim, *see* PAC ¶ 58, but ECHC is not named as a defendant in the caption, nor is there any indication that ECHC was served. As such, ECHC also is not a defendant to this action.  Moreover, ECHC is not a suable entity for purposes of this action.  *See Wierzbic v. County of Erie*, 2018 WL 550521, at *5 (W.D.N.Y. Jan. 25, 2018).

hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).  There are four ways a plaintiff can satisfy this requirement including alleging either: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.  *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. Mar. 30, 2010) (internal quotation marks and citations omitted).  Moreover, there must be a causal link between the policy and the alleged injury.  *Batista*, 702 F.2d at 397.  "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted).  In the instant case, Plaintiff does not seek to allege any formal policy officially endorsed by the municipality, or actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question.  Nevertheless, insofar as Plaintiff seeks to allege a *Monell* claim based on a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-

maker must have been aware, or based on a failure to train or supervise, the proposed amended complaint is sufficient.

Preliminarily, insofar as Plaintiff seeks to assert a *Monell* claim against Defendant Howard in his official capacity as Erie County Sheriff, the claim is actually against the Erie County Sheriff's office.  *Monell*, 436 U.S. at 690, n. 55 (holding "local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name.").  New York law, however, provides that "departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  *Wierzbic v. County of Erie*, 2018 WL 550521, at *5 (W.D.N.Y. Jan. 25, 2018) (dismissing claims against Erie County Sheriff's Department and village police department because "they are sub-units or agencies of their municipalities and not subject to suit) (citing cases).  Accordingly, Plaintiff cannot pursue a *Monell* claim against Defendant Howard in his official capacity as Erie County Sheriff.

With regard to Defendant County, a *Monell* claim based on a consistent and widespread, albeit not expressly authorized, practice so as to constitute a custom or usage of which a supervising policy-maker must have been aware is established "'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'"  *Triano v. Town of Harrison*, 895 F.Supp.2d 526, 534 (S.D.N.Y. 2012) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citation omitted)).  At this stage of the action, the court does not consider the weight of the two reports Plaintiff attaches to the proposed amended complaint in

support of a *Monell* claim based on a wide-spread practice; rather, the governmental investigative reports, along with the proposed amended complaint's factual allegations that despite Plaintiff's repeatedly advising the ECHC's medical staff, including those assigned to provide psychiatric care, of Plaintiff's history of psychiatric illness, and that Plaintiff was regularly taking benzodiazepine, and within a couple of days after not receiving benzodiazepine began exhibiting what Plaintiff maintains are common symptoms of benzodiazepine withdrawal, are sufficient to state a *Monell* claim based on a wide-spread practice.  *See Green v. Harris*, 2018 WL 4300021, at * 1-2 (W.D.N.Y. Sept. 10, 2018) (denying objections to decision granting inmate plaintiff leave to file an amended complaint asserting a *Monell* claim for a pattern and practice of deliberate indifference to serious medical needs at ECHC supported by the same Attorney General Report).  Significantly, both the Attorney General Report and the Commission Report attached as exhibits to the proposed amended complaint are the results of investigations into, *inter alia*, allegations of deficient medical and mental health care provided at the ECHC.

To plead a *Monell* claim based on a failure to train or supervise, a plaintiff must plead (1) that "a policymaker knows 'to a moral certainty' that her employees will confront a given situation[,]" (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[,]" and (3) "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). As the Supreme Circuit has observed,

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise]. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Without notice that a course of training [or supervision] is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citations omitted).

"Merely alleging that Defendants failed to institute adequate procedures is not enough to survive dismissal. Such a failure must first rise to the level of deliberate indifference to be actionable." *Hardy v. Erie Cnty.*, 2012 WL 1835624, at *3 (W.D.N.Y. May 18, 2012).

Insofar as Plaintiff also seeks to allege Defendants County and Howard failed to train or supervise the Medical Defendants, PAC ¶ 62, "when [municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights, the [municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61 (citations omitted). Correspondingly, a failure to train or supervise evinces a municipal custom or policy only where decision-makers adopt an "approach that they know or should know has failed to prevent tortious conduct by employees[.]" *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997). A single instance of allegedly unconstitutional conduct, however, is generally insufficient to impose *Monell* liability. *See Tuttle*, 471 U.S. at 831 ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the [County] liable on the basis of that policy, would amount to permitting precisely the

theory of strict *respondeat superior* liability rejected in *Monell*.") (Brennan, J.,

concurring); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015)

(affirming a dismissal of a plaintiff's *Monell* claim for deliberate indifference to serious

medical needs because "the amended complaint provides only one additional example

of a similar incident"); *Jones v. Town of E. Haven*, 691 F.3d 72, 85 (2d Cir. 2012)

(finding that the plaintiff showed "two instances, or at the most three" cases of

unconstitutional conduct by a "small number of officers" that occurred "over a period of

several years[,]" which "fell far short of showing a policy, custom, or usage of officers" or

conduct "so persistent that it must have been known to supervisory authorities").

Because Plaintiff's failure to train and supervise allegations are not based on a single

incident but, rather, on a series of incidents, she has plausibly pleaded that Defendants

had "notice that [the] course of training [and supervision were] deficient[.]"  *Connick*, 563

U.S. at 1360.  In the instant case, similar to the alleged widespread practice, the

governmental investigations upon which Plaintiff relies in the proposed amended

complaint are directed to allegations that the medical and mental health care was so

deficient as to give rise to Plaintiff's claim that those Medical Defendants delivering such

care were not adequately trained or supervised.

Accordingly, Plaintiff's Motion to Amend to assert claims under *Monell* based on

a widespread practice, as well as on failure to train or supervise is GRANTED.

### 3.    Excessive Force

In the proposed amended complaint, Plaintiff seeks to allege that following her

mental health evaluation with Graham on January 27, 2018, after collapsing while being

transported back to her cell, Defendant Bugman kicked Plaintiff in the head and told her

to "quit faking," PAC ¶¶ 25-27, thus subjecting Plaintiff to excessive force in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure.  *Id*. ¶¶ 75-80. In opposing this claim, County Defendants argue the claim is nonsensical because Bugman is not law enforcement personnel, but a nurse.  County Defendants' Memorandum at 24.  Plaintiff argues Bugman's employment position with the County is irrelevant to Plaintiff's excessive force claim.  Plaintiff's First Response to County Defendants at 10; Plaintiff's Second Response to County Defendants at 10.  County Defendants do not argue in further opposition to this claim.

Here, the alleged kick to Plaintiff's head allegedly delivered by Defendant Bugman did not occur in connection with any arrest, seizure, or stop.  *See Graham v. Connor,* 490 U.S. 386, 388 (1989) (standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard).  Plaintiff does not reference, and the court's research does not reveal, any case holding or suggesting a defendant, like Bugman whose job does not require arresting, seizing, or stopping another, may be liable for a constitutional violation based on conduct that otherwise establishes only an assault and battery claim under state common law.  *Compare Lewis v. Mollette*, 752 F.Supp.2d 233 (N.D.N.Y. 2010) (denying summary judgment on Fourth Amendment excessive force claim asserted against defendant, employed as a "Youth Division Aide" responsible for maintaining safety and security within youth detention facility and authorized to use, when necessary, a "Physical Restraint Technique" ("PRT"), to prevent harm to an inmate or others, based on defendant's use of PRT when the circumstances failed to establish

any need for use of the PRT to subdue the plaintiff).[13]  Plaintiff does not assert she was arrested or seized by Bugman when Bugman allegedly kicked Plaintiff in the head and, as such, this claim falls outside the protection of the Fourth Amendment.  *See Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (vacating district court's denial of summary judgment to defendants on plaintiff's Fourth Amendment excessive force claims where the plaintiffs failed to assert either that they were arrested or seized when the defendants allegedly used the excessive force).

Plaintiff's Motion to Amend is thus DENIED as to the excessive force claim against Defendant Bugman.

### 4.    Failure to Intervene

The proposed amended complaint includes a claim that the Medical Defendants failed to intervene in the inadequate medical care Plaintiff allegedly received so as to prevent harm to Plaintiff.  PAC ¶¶ 82-84.  In opposing this proposed claim, County Defendants maintain that assuming, *arguendo*, the remaining claims are dismissed, the court will have held there is no other cognizable claim such there is no unconstitutional incident with which County Defendants can be held liable failure to intervene.  Second Toth Affidavit ¶ 10; Third Toth Affidavit ¶ 10.  Defendant Chapin argues the allegations Plaintiff seeks to assert against Chapin who encountered Plaintiff on only one occasion, *i.e.*, a January 30, 2018 psychiatric medication consultation, are insufficient to state a plausible claim for failure to intervene against him.  Chapin's Memorandum at 6, 9.

---

[13] The court notes that Plaintiff did not assert the Fourteenth Amendment as a basis for this claim.  *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[O]utside the context of an arrest, a plaintiff may make claims of excessive force under [section] 1983 under the Due Process Clause of the Fourteenth Amendment.").  *See also Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (same).

"'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  "'An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.'" *Id*. (quoting *Anderson*, 17 F.3d at 557).  "To establish such a claim of failure to intervene, a plaintiff must prove the following four elements: (1) that a constitutional violation was being committed against the plaintiff; (2) that the officer knew, or deliberately ignored, the fact that the constitutional violation was going to be, or was being, committed; (3) that the defendant had a reasonable opportunity to intervene and prevent the harm; and (4) that the defendant did not take reasonable steps to intervene."  *Thomas v. City of Troy*, 293 F. Supp.3d 282, 296 (N.D.N.Y. 2018).  In the instant case, should Plaintiff be able to establish her Fourth Amendment deliberate indifference claim against any of the Medical Defendants, then the failure to intervene claim asserted in the proposed amended complaint is plausible.  *See Krzeminski v. City of Buffalo*, 2018 WL 10335659, at * 6 (W.D.N.Y. Dec 10, 2018) (recommending plaintiff's failure to intervene claims not be dismissed where triable issues of fact precluded summary judgment on the plaintiff's related claims of Constitutional violations), *report and recommendation adopted*, 2019 WL 5956368 (W.D.N.Y. Nov. 13, 2019).  Here, Defendants are alleged to have failed to intervene with the failure to provide adequate medical care to Plaintiff, particularly with

regard to her benzodiazepine withdrawal.[14]  In particular, here, the allegations in the proposed amended complaint describe a series of medical examination and consultations at which Plaintiff advised the various Medical Defendants of her significant psychiatric history and listed numerous medications, including benzodiazepine, with Plaintiff later complaining of symptoms she maintains are consistent with benzodiazepine withdrawal while also complaining she was not receiving any benzodiazepine despite regularly taking such medication since it was first prescribed in 2016 including earlier in the day she was arrested on January 24, 2018.

Plaintiff's Motion to Amend is GRANTED with regard to the Medical Defendants' failure to intervene claim.

## B.      New York Common Law Medical Malpractice

The proposed amended complaint's Fourth Claim seeks to assert a medical malpractice claim under New York common law against all Defendants.  PAC ¶¶ 68-81. In opposing Plaintiff's Motion to Amend, County Defendants argue that because pursuant to N.Y. Gen. Mun. Law § 50-i[1] ("§ 50-i[1]), claims against a municipality and its employees must be commenced within one year and 90 days of the events on which such claims are premised, such claim is time-barred because the alleged negligence occurred on February 6, 2018, yet the action was not commenced until July 9, 2020. County Defendants' Memorandum at 13.  County Defendants further argue Plaintiff

---

[14] The court notes that although § 1983 claims for failure to intervene are generally predicated on allegations that defendant law enforcement or corrections officers failed to intervene against the use of excessive force in the plaintiff's arrest or seizure or to protect the plaintiff from physical harm by another inmate, courts within the Second Circuit have recognized failure to intervene claims in the context of alleged deliberate indifference to the plaintiff's serious medical needs.  See, *e.g.*, *Bernier v. Carter*, 2020 WL 2092481, at * 5 (N.D.N.Y. May 1, 2020) (rejecting recommendation that summary judgment be granted in favor of defendant who allegedly failed to provide the inmate plaintiff with adequate medical care).

failed to serve timely serve a Notice of Claim pursuant to N.Y. Gen. Mun. Law § 50-e.

*Id*.  Defendant Chapin argues that with the presumed dismissal of Plaintiff's First and

Fifth Claims, no other federal claims will remain in the action such that the court should

decline to exercise supplemental jurisdiction over the medical malpractice claim.

Chapin's Memorandum at 10-12; Chapin's Reply at 4-5.  Alternatively, Chapin maintains

Plaintiff's medical malpractice claim is sufficiently distinct from the proposed amended

complaint's other claims such that the medical malpractice claim is not part of the same

case or controversy as required to support supplemental jurisdiction.  *Id*.  In opposition

to County Defendants, Plaintiff argues that naming individual municipal employees in a

notice of claim is not a condition precedent to joining such defendants in the action.

Plaintiff's First Response to County Defendants at 9; Plaintiff's Second Response to

County Defendants at 9.  Plaintiff further maintains that as of March 12, 2020, the

statute of limitations was tolled by Executive Order § 202.8[15] in light of the COVID-19

pandemic.  *Id*.  Plaintiff did not separately respond to Defendant Chapin's arguments.

　　It is undisputed that Plaintiff claim to have served County Defendants with a

Notice of Claim as required by N.Y. Gen. Mun. Law § 50-e.  Service of a Notice of Claim

is a prerequisite to Plaintiff's state law claims against municipalities and their officers.

N.Y. County Law § 52[1].  Regardless of whether Plaintiff is correct in asserting that a

Notice of Claim need not name individual defendants, Plaintiff's First Response to

County Defendants at 9; Plaintiff's Second Response to County Defendants at 9, a

Notice of Claim must be served "within ninety days after the claim arises. . . ."  N.Y.

Gen. Mun. Law § 50-e[1](a).  Because the final factual allegation involving the County

---

[15] Plaintiff incorrectly refers to the Executive Order as "202.1."

Defendants occurred on February 6, 2018, the Notice of Claim was required to be filed by May 6, 2018, and Plaintiff's failure to do so is fatal to her medical malpractice claims against all County Defendants.  *See Davis v. New York*, 342 N.E.2d 516, 517 (N.Y. 1975) (affirming appellate court's dismissal of action against municipality for failing to comply with Notice of Claim requirements under N.Y. Gen. Mun. Law §§ 50-e and 50-i).  Accordingly, the court need not reach Plaintiff's argument that the one year and 90-day limitations period applicable to Plaintiff's medical malpractice claim against the County Defendants was tolled by Executive Order 202.8.

With regard to Defendant Chapin's[16] argument that the court should refrain from exercising supplemental jurisdiction over the medical malpractice claim, such argument is without merit insofar as it is predicated on the presumption that the court would find the proposed amended complaint fails to adequately allege a Fourth Amendment deliberate indifference claim or a failure to intervene claim against Chapin.  Nor is there any merit to Chapin's alternative argument that the deliberate indifference claim asserted against him is too remote from the federal claims to support the exercise of supplemental jurisdiction; rather a plain reading of the proposed amended complaint's allegations establishes the same claimed facts, *e.g.*, that Plaintiff suffered sustained medical problems because of the alleged unlawful benzodiazepine withdrawal, are alleged in support of both the federal claims and the New York common law medical malpractice claim.

---

[16] New York's Notice of Claim provision does not apply to Chapin who is not a County employee.  *See Merrimack Mutual Fire Ins. Co., v. Long Island Power Authority*, 41 N.Y.S3d 44, 47 (2d Dept. 2016) (observing defendant electrical power company, as a private entity, was not subject to New York's Notice of Claim provision, § 50-e).

Insofar as Plaintiff's Motion to Amend seeks to assert medical malpractice, the motion is DENIED as to the County Defendants and is GRANTED as to Defendant Chapin.

## **CONCLUSION**

Based on the foregoing, County Defendants' First Motion to Dismiss (Dkt. 6) is DISMISSED as moot; Defendants' Second Motion to Dismiss (Dkt. 14) is DISMISSED as moot; Plaintiff's Motion to Amend (Dkt. 16) is GRANTED in part and DENIED; Defendant Chapin's Motion to Dismiss (Dkt. 19) is DISMISSED as moot.  The amended complaint, amended in accordance with this Decision and Order (Dkt. 16-1) should be filed **within ten (10) days** of receipt of this Decision and Order, following which the matter will be scheduled for a conference pursuant to Fed.R.Civ.P. 16(b).

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        August 17th, 2021
                    Buffalo, New York